# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DE'MARIAN A. CLEMONS,

    Plaintiff(s),

v.

BRIAN WILLIAMS, et al.,

    Defendant(s).

Case No.: 2:13-cv-00093-RFB-NJK

**Order**

(Docket Nos. 249, 260)

Pending before the Court is Defendants' counsel's (the "OAG") motion to file under seal its motion to withdraw (Docket No. 250) and its supplement to the motion to seal. Docket Nos. 249, 260. For the reasons stated below, the motion to seal is **DENIED**, and the supplemental motion is **GRANTED** in part and **DENIED** in part.

**I. STANDARDS**

There is a strong presumption of public access to judicial records. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). A party seeking to file documents under seal must overcome that presumption. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010).

The standard for a motion to seal turns on whether the sealed materials relate to a dispositive or non-dispositive motion. *See Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097–99 (9th Cir. 2016). A motion is "dispositive" if it "is more than tangentially related" to the merits. *See id.* at 1101. A motion to withdraw is at most only tangentially related to the merits. It is thus non-dispositive.

For a motion to seal materials that relate to a non-dispositive motion, "a party need only satisfy the less exacting 'good cause' standard." *Id.* at 1098. "The 'good cause' language comes

from [Fed. R. Civ. P. 26(c)(1)], which governs the issuance of protective orders in the discovery process: 'The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense….'" *Id.* To establish "good cause," a party must show "that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Rule 26(c) confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. Rhinehart*, 467 U.S. 20, 33 (1984).

## II. ANALYSIS

The OAG moves to seal its motion to withdraw for two reasons: that the motion contains (1) embarrassing information; and (2) information protected by attorney–client privilege. The Court analyzes each reason in turn.

### A. Embarrassing Information

The OAG argues that the motion contains "details involving an altercation between [Defendant] Dressler and an employee of the OAG." Docket No. 260 at 3. The OAG asserts that those details are "highly embarrassing to not only [Defendant] Dressler, but also the OAG employee." *Id*. The OAG asserts that embarrassing details are on these pages of the motion: 3:25–28, 4:1–9, 4:15–16, 5:16–25, 5:28, 6:1, Exhibit A at 4:5–11, and Exhibit B at 2:19–22 and 3:1–3. *Id.* The OAG's argument stops there.

The OAG fails to meet the good-cause standard. The OAG's submission constitutes a broad allegation, unsubstantiated by specific examples or articulated reasoning; in other words, exactly what does not suffice as a showing of good cause pursuant to *Beckman*.

### B. Information Protected by Attorney–Client Privilege

The OAG submits that the motion contains communications "protected by attorney-client privilege." *Id*. The OAG asserts that Defendant "Dressler has conceded in her Opposition that the information relied upon by the OAG and [her] is properly considered attorney-client privileged or work product, and that she herself would object to any disclosure of the information to 'any

2

person.'" *Id.* at 4 (citing Docket No. 259 at 2 n.1). The OAG asserts that information protected by attorney–client privilege is on these pages of the motion: 2:16–22, 2:27–28, 3:1, 3:20–24, and 4:10–12; Exhibit A at 2:3–5, 2:8–12, 2:17–20, 2:25–27, 3:1–7, 3:14–16; and all of Exhibit C. *Id.*

"Attorney-client privilege protects confidential disclosures made by a client to an attorney" for legal advice, "as well as the attorney's advice" in response. *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997). "[T]hat a person is a lawyer does not make all communications with that person privileged." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id*. The privilege must be "'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973)). There is an eight-part test to determine whether information is protected by the privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (citation omitted). The party asserting the privilege must prove "each essential element." *Id.* at 608.

None of the information in the motion to withdraw that the OAG cites as protected by attorney–client privilege is in fact protected. Each passage fails to meet at least one part (and often many parts) of the eight-part test in *Ruehle*.

The Court will not lay out each of the many passages the OAG cites, but three examples demonstrate that the cites passages do not constitute privileged communications. First, on page 2, lines 16–22, the OAG writes:

> Beginning in June 2019, the OAG attempted to contact Ms. Dressler numerous times regarding outstanding interrogatory answers. *Id*. at ¶5. Ms. Dressler did not respond to these emails or phone calls. *Id*. On June 27, 2019, undersigned counsel sent Ms. Dressler an email regarding her failure to contact the OAG. *Id*. at ¶7. This email warned Ms. Dressler that she was required to participate in the defense of this matter, but had failed to do so. *Id*. at ¶8-9. Further, the email advised if she failed to contact the OAG by July 3, 2019, the OAG would seek to withdraw its representation. Id. at ¶9.

Docket No. 250. That passage is about only the OAG's trouble in communicating with Defendant Dressler and lacks any communication whatsoever. Second, on page 3, lines 20–24, the OAG writes:

> Ms. Dressler informed Ms. Hodges she was "sick" of inmate lawsuits and that she previously changed her phone number so "you guys" could not find her, but that the OAG was able to "find me again." *Id*. at ¶5-6. At this time, Ms. Hodges informed Ms. Dressler she needed to contact the Deputy Attorney General (e.g. the undersigned) assigned to this matter to discuss her frustrations. *Id*. at ¶6.

*Id.* This passage is about only Defendant Dressler's apparent hope to evade the OAG having been dashed again. It lacks any communications relating to legal advice sought in confidence by Defendant Dressler. Finally, on page 3 of Ex. A, lines 1–7, the OAG writes:

> The email advised Ms. Dressler that if she failed to provide the interrogatory responses for my review, it would severely prejudice my ability to defend her and could result in sanctions against her. Further, this email advised Ms. Dressler that if she did not contact my office, I would move to withdraw as counsel based on her lack of good faith participation. The email further advised her that if I withdrew based on her lack of good faith, she would be required to hire her own counsel, at her expense. Ms. Dressler contacted me via telephone after receiving this email.

This passage is again about only failing communication between the OAG and Defendant Dressler. The OAG's statements that (1) if Defendant Dressler failed to cooperate it would prejudice the OAG's defense and that she could be sanctioned and (2) if the OAG withdrew Defendant Dressler would have to hire new counsel were not privileged communications.

As the Court noted above, the other many passages the OAG cites as privileged are not privileged for similar reasons.

All told for all information the OAG cites as protected by attorney–client privilege, the OAG failed to meet "each essential element" of the eight-part test in *Ruehle*. The one exception is Exhibit C, Docket No. 250-3. While the Court is not convinced that the entire letter constitutes a privileged communication, the Court finds that redacting it would leave the letter without significant information. Therefore, the Court allows Exhibit C to remain under seal.

///

///

4

## III. CONCLUSION

For the reasons stated above, Defendants have not met the good-cause standard for sealing the motion to withdraw. Docket No. 250. Accordingly, the motion to seal, Docket No. 249, is **DENIED**. The supplemental motion to deal, Docket No. 260, is **GRANTED** in part and **DENIED** in part. No later than September 16, 2019, the OAG shall file its motion to withdraw on the public docket, with a placeholder page in place of Exhibit C, which shall remain under seal.

IT IS SO ORDERED.

Dated: September 12, 2019

                                              _____
                                              Nancy J. Koppe
                                              United States Magistrate Judge